|, GASKINS, J.
Franklin Guest Home appeals a trial court judgment ordering the facility to furnish medical records and other documents to Leo Thornhill, brother of Glenda Ruth Gould. Mr. Thornhill was his sister’s agent under a power of attorney. For the following reasons, we affirm in part and reverse in part the trial court ruling.
FACTS
Glenda Ruth Gould was a resident of the Franklin Guest Home (FGH). She had granted an extensive power of attorney to her brother, Mr. Thornhill, to conduct all her business, including gaining access to medical records. On November 12, 2002, Mr. Thornhill filed a motion for production of documents on behalf of his sister. He claimed that she sustained injuries in a recent fall and sought production of medi *1125 cal records and incident reports.[1] He claimed that FGH refused to produce the documents without a court order. He asserted that, under La. R.S. 40:1299.96 et seq., he is entitled to receive the documents. In addition to the medical reports and all incident report forms related to Ms. Gould’s falls from January 1, 2000, to present, Mr. Thornhill also sought production of “2567 survey forms” filed with the Department of Health and Hospitals (DHH). These are documents which set forth deficiencies in the nursing home. Mr. Thornhill claimed that these documents are public records under La. R.S. 44:1 et seq.
After several continuances, on December 9, 2002, a hearing was held to show cause why the documents should not be produced. Mr. Thornhill | ¡^testified that he had provided FGH with his power of attorney and requested production of his sister’s medical records, incident reports, and “2567 survey forms.” He claimed that the facility refused to produce the documents.
FGH argued that La. R.S. 40:1299.96 required a written request for the medical records, and that Mr. Thornhill had not made his request in writing. FGH maintained that it copied the medical records, but that Mr. Thornhill never came to get them. FGH also contended that the incident reports were not part of the medical records. FGH further argued that the “2567 survey forms” are public records filed with the DHH and that the reports could be obtained from that agency.
At the hearing, Mr. Thornhill argued that the statute only required that the facility be furnished with written authorization for production of the documents, and that the power of attorney fulfilled that requirement. He also argued that the incident reports were part of his sister’s medical records. He further maintained that, because FGH had access to the “2567 survey forms,” they also should be produced.
The trial court found that the power of attorney satisfied the statutory requirement of a signed authorization for the records and ordered that FGH produce the documents immediately. Mr. Thorn-hill was granted $250 in attorney fees and FGH was ordered to pay court costs. FGH appealed the trial court ruling.
^REQUEST FOR MEDICAL RECORDS
According to FGH, the trial court erred in ordering the production of medical records under La. R.S. 40:1299.96, where no written request for the documents was made and no payment was tendered for copying and processing, as contemplated by the statute. Under the facts of the present case, this argument is without merit.
La. R.S. 40:1299.96 provides in pertinent part:
A. (1) Each health care provider shall furnish each patient, upon request of the patient, a copy of any information related in any way to the patient which the health care provider has transmitted to any company, or any public or private agency, or any person.
(2)(a) Medical records of a patient maintained in a health care provider’s office are the property and business records of the health care provider.
(b) Except as provided in R.S. 44:17, a patient or his legal representative, or in the case of a deceased patient, the exec *1126 utor of his will, the administrator of his estate, the surviving spouse, the parents, or the children of the deceased patient, seeking any medical, hospital, or other record relating to the patient’s medical treatment, history, or condition, either personally or through an attorney, shall have a right to obtain a copy of such record upon furnishing a signed authorization and upon payment of a reasonable copying charge, not to exceed one dollar per page for the first twenty-five pages, fifty cents per page for twenty-six to five hundred pages, and twenty-five cents per page thereafter, a handling charge not to exceed fifteen dollars for hospitals and seven dollars and fifty cents for other health care providers, and actual postage. The individuals named herein shall also have the right to obtain copies of patient X-rays, microfilm, and electronic and imaging media, upon payment of reasonable reproduction costs and a handling charge of twenty dollars for hospitals and ten dollars for other health care providers. In the event a hospital record is not complete, the copy of the records furnished hereunder may indicate, through a stamp, coversheet, or otherwise, that the record is incomplete, (c) If a copy of the record is not provided within a reasonable period of time, not to exceed fifteen days following the receipt of the request and written authorization, and production of the record is obtained through a court order or subpoena duces |4tecum, the health care provider shall be liable for reasonable attorney fees and expenses incurred in obtaining the court order or subpoena duces tecum. Such sanctions shall not be imposed unless the person requesting the copy of the record has by certified mail notified the health care provider of his failure to comply with the original request, by referring to the sanctions available, and the health care provider fails to furnish the requested copies within five days from receipt of such notice. Except for their own gross negligence, such health care providers shall not otherwise be held liable in damages by reason of their compliance with such request or their inability to fulfill the request.[2]
In order to produce the documents, the statute requires a “written authorization.” FGH equates this language with requiring a written request for production of the medical records. The statute does not require a written request for production of documents and the trial court correctly rejected that reasoning. The statute does not specify in what manner the request for production of the medical records may be made. It is reasonable to conclude that even an oral request, such as made by Mr. Thornhill, would be sufficient. FGH does not dispute that Mr. Thornhill furnished a valid power of attorney from his sister, entitling him to request and receive medical records on her behalf. This was sufficient written authorization from the patient for release of the medical records and documents to Mr. Thornhill.
However, under the evidence presented, FGH simply refused to produce the records without a court order, even though Mr. Thornhill had provided FGH with the power of attorney and requested the medical records. FGH argues that it copied *1127 and prepared the records and that Mr. | ¡¡Thornhill failed to go to the facility to retrieve them, yet it presented no evidence to support this argument. Mr. Thornhill disputed this testimony, stating that he went to FGH three or four times and his request for the records was denied. The trial court did not err in finding that Mr. Thornhill’s repeated requests for the medical records were sufficient under the statute, and that FGH was in violation of the statute in refusing to give him the records.
Although FGH also argues that Mr. Thornhill failed to offer payment for the records, as required by the statute, there is no showing that the facility ever copied the records and informed him of the charges. In his motion for production of documents, Mr. Thornhill stated that he stands ready to pay the cost for the copies as specified in La. R.S. 40:1299.96. FGH did not have reasonable grounds for denying the records when it did not specify the amount due for copying the records, despite the plaintiffs numerous requests.
INCIDENT REPORTS AND NURSING HOME SURVEYS
FGH argues that the trial court erred in ordering it to produce the incident reports of Ms. Gould’s falls at the facility and the “2567 survey forms” which were submitted to the DHH. FGH contends that these documents are not medical records. FGH also asserts that the “2567 survey forms” are part of the public record which can be obtained from DHH. The facility maintains that the trial court erred in finding that these documents were medical records under La. R.S. 40:1299.96 and in ordering that they be produced.
|fiMr. Thornhill argues that the incident reports relating to Ms. Gould are part of her medical records. Under La. R.S. 40:1299.96(A)(2)(b), he claims that the documents are “medical, hospital, or other records relating to the patient’s medical treatment, history, or condition.” As to the “2567 survey forms,” he avers that, although these are public records on file with DHH, there is no reason to prevent him from requesting production of the reports from the health care provider who provided the information to DHH.
Regarding the incident reports, if any exist, we see no reason why these documents would not be included as part of Ms. Gould’s records at FGH. As stated above, the statute requires production of medical, hospital, or other records relating to a patient’s medical treatment, history, or condition. If not contained in the medical or hospital records, incident reports of a fall at the facility would, at the very least, be considered other records relating to her medical treatment, history, or condition. Certainly it is expected that Ms. Gould’s records at FGH will contain all information regarding her care at the facility.
As to the “2567 survey forms,” the record does not fully set forth exactly what these documents are. According to the brief filed by FGH, this is a survey form by DHH which sets forth deficiencies in the nursing home. FGH stated that the document is posted on the wall in the nursing home. The facility argues that the forms are public records that could easily be obtained through a public records request from the DHH.
La. R.S. 44:1 et seq., dealing with public records, specifies the definition of public bodies and public records. It specifies those materials |7that are exempt from the Public Records Act. It also states that the custodian of the public records is the public official or head of a public body having custody or control of a public record. Based upon the limited information in the record, it does not appear that FGH is a public body having custody of public rec *1128 ords. Also, no evidence was presented that the disputed survey forms would be part of Ms. Gould’s medical or other records at the facility. Therefore, based upon the information before us, we find that the trial court erred in ordering production of the “2567 survey forms” under the authority of La. R.S. 40:1299.96.
CONCLUSION
For the reasons stated above, we affirm the ruling of the trial court ordering Franklin Guest Home to produce for Leo Thornhill the medical records and incident reports regarding Glenda Ruth Gould. We reverse that portion of the trial court judgment ordering production of the “2567 survey forms’’ generated by the facility for the Louisiana Department of Health and Hospitals. Costs in this court are assessed to Franklin Guest Home.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.

. The plaintiff states in his brief that Ms. Gould died as a result of head injuries from a fall suffered at Franklin Guest House.

. We note that the trial court imposed attorney fees and costs in this case. Under the requirements of the statute, sanctions are not to be imposed unless the health care provider is notified by certified mail, the sanctions are referred to, and the health care provider fails to respond within five days of receipt of the notice. In this matter, there was no showing that Mr. Thornhill made such demand upon FGH. However, FGH has not assigned as error the imposition of sanctions. Therefore, the issue is not before us for review.